UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| VALERIE MORENO d/b/a CWS COUNTRY WIDE SHOOTERS,<br><br>Petitioner,<br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,<br><br>Respondent. | EP-14-CV-00089-DCG |

## ORDER

Presently before the Court is Respondent Bureau of Alcohol, Tobacco, Firearms and Explosives' ("the government" or "ATF") "Motion for Summary Judgment" ("Motion") (ECF No. 9), filed on October 7, 2014. After due consideration of the Motion, the parties' filings, and the applicable law, the Court enters the following Order.

### I.  BACKGROUND

Petitioner Valerie Moreno d/b/a CWS Country Wide Shooters ("Moreno" or "Petitioner") filed a petition in this Court on March 10, 2014, requesting *de novo* judicial review pursuant to 18 U.S.C § 923(f)(3) of the administrative decision denying renewal of her application for a federal firearms license. *See* Pet. 1, ECF No. 1. Petitioner contends that the government improperly denied her renewal application when it found that she willfully violated the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. §§ 921–31. *See id.*

The GCA, which governs the licensing of firearms importers, manufacturers, and dealers, authorizes the government to inspect licensed firearm businesses in order to ensure the businesses meet initial qualifying standards and that they later continue to comply with federal firearms license regulations. *See* 18 U.S.C. § 923(g). During the course of an application

inspection that occurs after approval, government investigators conduct a sit–down interview at the licensee's place of business and review the required records with that individual along with the regulatory requirements of a firearms licensee. *See* Resp't's Proposed Undisputed Facts ("RPUF") ¶ 6, ECF No. 10.[1] Government investigators also conduct unannounced compliance inspections which involve examining the records and firearms inventory that are on file. *See id.* ¶ 7.

Petitioner initially procured a federal firearms license on or about March 2010. *See id.* ¶ 3. Petitioner's original federal firearms license application listed the place of business[2] and business hours of Tuesday through Thursday, from 10:00 am until 2:00 pm. *See id.* ¶ 4. The government conducted a qualification inspection of Petitioner in March 2010. *See id.* ¶ 8. As part of the inspection, Petitioner was presented with a document ("the Acknowledgement") which, when executed, acknowledged that she had reviewed and discussed the applicable legal

---

[1] The Court's Standing Order Regarding Motions for Summary Judgment states that:
All material facts set forth in [Respondent's Proposed Undisputed Facts] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with . . . this Standing Order . . . . The papers opposing a motion for summary judgment shall include a document entitled "Response to Proposed Undisputed Facts," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Proposed Undisputed Facts whether each of the facts asserted by the moving party is admitted or denied. The Response to Proposed Undisputed Facts shall also include in a separate section entitled "Disputed Issues of Material fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried . . . . Pursuant to Federal Rules of Civil Procedure 56(c)(3) and 56(e), counsel . . . are hereby notified that failure to provide specific citations to evidence in the record as required by this Standing Order and Federal Rule of Civil Procedure 56(c)(l) may result in an order denying the motion for summary judgment when the movant fails to comply, or, an order granting summary judgment when the nonmovant fails to comply.
Court's Standing Order Regarding Mots. for Summ. Judgment 1–2. Petitioner failed to provide the Court with a "Response to Proposed Undisputed Facts." Pursuant to Federal Rule of Civil Procedure 56(e) and the Court's Standing Order, the Court considers undisputed for purposes of the Motion the government's proposed facts not explicitly contradicted by Petitioner's submitted evidence.

[2] Petitioner subsequently submitted a change of address, notifying the government of a change in location of the place of business. *See* RPUF ¶ 3 n.2.

y

z

requirements with respect to required records, conduct of business, definition of terms and miscellaneous provision. *See id.* ¶¶ 8, 13. In particular, Petitioner was informed of the government's right to enter a licensee's premises at any time, unannounced, during business hours to examine required records as part of a compliance inspection. *See id.* ¶ 10. Petitioner was cautioned that if ATF inspectors, after properly identifying themselves with ATF credentials, were denied access to the premises and if they were not provided with the required records of the inventory at such time, her license could be subject to revocation. *See id.* Petitioner was also advised that the firearms business could only be conducted on the premises of the listed place of business and that a separate license must be acquired for any and each additional location where firearms were to be dealt. *See id.* ¶ 11. Petitioner assured ATF during the course of the inspection that she had extensive knowledge of the firearms business from her previous work experience as an employee of a federal firearms licensee. *See id.* ¶ 9. After being given an opportunity to ask questions and request further explanation, Petitioner signed the Acknowledgement, indicating that she understood that she was responsible for familiarizing herself with all the laws and regulations governing the licensed firearms business. *See id.* ¶¶ 12–13. Shortly thereafter, ATF issued Petitioner her firearms license as a manufacturer of firearms other than destructive devices. *See id.* ¶ 16.

On July 27, 2010, an agency inspector attempted to conduct a compliance inspection of Petitioner's business during a verified, regular business day and hour. *See id.* ¶¶ 17, 19. Petitioner was not on the premises at the time, and when contacted by telephone, Petitioner told the agency inspector that she could not be available for the inspection at that time for personal reasons. *See id.* ¶ 18. The ATF area supervisor then contacted Petitioner and explained the reasons for ATF's urgency to conduct the inspection—a local federal firearms licensee had a

large amount of firearms taken from her inventory and ATF had information that some or all of these firearms might have been transferred to Petitioner—and so arrangements were made for an inspection the next day.  *See id.* ¶¶ 20–21.

The following day, Petitioner told an agency inspector that she did not have any ATF firearms transaction records ("Forms 4473")[3] because she only sold to licensed dealers; that she had the Acquisition & Disposition records ("A&D Records") on an excel spreadsheet in the computer; and advised that the records were not current because 339 firearms had been sent to California for a gun show.  *See id.* ¶¶ 22–23.  Consequently, the inspection was delayed again, and Petitioner was instructed that the gun show firearms needed to be inventoried once they returned to El Paso, Texas.  *See id.* ¶ 25.  On August 3, 2010, Petitioner notified ATF that she was on her way to the licensed business premises with the gun show firearms but she requested the inventory be postponed until the following day.  *See id.* ¶ 26.  ATF rejected her request and immediately proceeded to the licensed business premises.  *See id.* ¶ 27.  When the ATF area supervisor arrived thirty minutes later, Petitioner informed him that, despite instructions to retain all firearms until ATF had inspected them, 58 of the 339 firearms had been sold, loaded back unto the truck, and shipped back to California.  *See id.* ¶¶ 28–29.

As a result of the this inspection, ATF issued an Amended Report of Violations to Petitioner citing violations that included conducting business in an address other than the one specified on the license, not obtaining a National Instant Criminal Background Check System check on an individual, failing to execute an ATF Form 4473, and not logging the guns out of the records.  *See id.* ¶¶ 30–33.  Both the violations and the regulations were reviewed with Petitioner at a warning conference, and she signed a new Acknowledgement that specifically

---

[3] Form 4473 involves over the counter transactions and identifies the individual that purchases the firearm. Form 4473 is only used for transfers by licensees to non–licensees.  *See* RPUF ¶ 22 n.3.

addressed ATF's "Right of Entry and Examination" pursuant to 27 C.F.R. § 478.23, as well as the "Premises Covered" by the license pursuant to 27 C.F.R. § 478.50. *See id.* ¶¶ 35–37. Following the warning conference, ATF issued Petitioner a letter reminding her of the topics discussed at the conference, and cautioning her that future violations could be considered willful and could result in the revocation of her license. *See id.* ¶ 38. The letter also advised Petitioner to anticipate future inspections to ensure compliance, and to contact ATF with any questions she may have about the requirements of the federal firearms laws. *See id.*

On July 31, 2012, at approximately 11:00 am, ATF attempted to conduct another compliance inspection during regular posted business hours. *See id.* ¶¶ 40, 42. Petitioner was not on the premises but her business appeared to be open to customers and an employee was present.[4] *See id.* ¶ 41. The Agency inspectors identified themselves, stated the purpose of their presence, and requested the required firearms records. *See id.* ¶¶ 41, 43. Petitioner was reached by phone, whereupon she requested that the inspection be delayed until she was able to return. *See id.* ¶ 44. She further stated that her employee was not qualified to assist in the inspection and insisted that she or her attorney needed to be present. *See id.* ¶¶ 44–45, 48. When Petitioner was unable to procure the delay, she ended the phone call so that she could contact her attorney. *See id.* ¶ 45. When contacted again by the ATF area supervisor—who had proceeded to the premises over one hour after the compliance inspection was set to begin—Petitioner was warned that failure to permit the inspection was grounds for revocation. *See id.* ¶ 56. Petitioner was reminded that this requirement had been discussed with her during the previous inspections. *See id.* Shortly thereafter, the employee on site stated to ATF that he, the employee, needed to leave the premises. *See id.* ¶ 57. The ATF inspector informed the employee that he would remain and

---

[4] Petitioner refutes that her business was open to the public at the time of the July 31, 2012, inspection. *See* Resp. 5–6, ECF No. 12

await his return. *See id.* ¶ 58. The employee did not return despite the inspector remaining outside the business premise until 6:00 pm. *See id.* Petitioner later contacted ATF to inform ATF that she was available for an inspection. *See id.* ¶ 59. She was advised that ATF does not schedule inspections because Petitioner failed to allow the inspection to occur when ATF was present. *See id.* No further attempts to conduct an inspection were made. *See id.*

On November 28, 2012, an agency inspector received information from a local federal firearms licensee that a customer had purchased a rifle from Petitioner, and that the transfer of the firearm took place in the parking lot of a local restaurant. *See id.* ¶ 60. ATF opened an investigation into the allegation. *See id.* In the course of an investigation, the purchaser was located and following an interview, the investigator ascertained that the incident did in fact take place. *See id.* ¶¶ 60–63.

On February 3, 2013, Petitioner submitted an application to renew her federal firearms license. *See id.* ¶ 64. On April 10, 2013, ATF denied her application, alleging that Petitioner willfully: (1) failed to allow ATF to conduct an inspection, in violation of 18 U.S.C. § 923(g)(1)(B)(ii)(I) and 27 C.F.R. § 478.23(b)(2)(i); and (2) conducted business at an address other than that specified on her federal firearms license, in violation of 18 U.S.C. §§ 923(c) and 923(j), and 27 C.F.R. §§ 478.50 and 478.100. *See id.* ¶ 65. Petitioner timely requested a hearing on the matter, which occurred on October 9, 2013, in El Paso, Texas. *See id.* ¶ 67. The hearing officer subsequently determined that the government established that Petitioner willfully violated the provisions of Title 18, United States Code, Chapter 44, and the regulations thereunder when she: (1) prevented ATF from inspecting and examining the inventory and records during business hours, without reasonable cause or warrant, for ensuring compliance with the record keeping requirement of the GCA not more than once during any twelve month period; and (2)

conducted business at an address other than that specified on her federal firearms license on November 24, 2012. *See id.* ¶ 69. The hearing officer concluded that Petitioner was aware of what her legal requirements were as a federally licensed firearms manufacturer, but purposely disregarded or was plainly indifferent to, those requirements. *See id.* On January 8, 2014, the ATF issued a Final Notice of Denial of Application or Revocation of Firearms License. *See id.*

On March 10, 2014, Petitioner filed the instant action, requesting judicial review of the Final Notice of Denial of Firearms License. *See* Pet. 1. The government filed this Motion on October 7, 2014. Petitioner responded on November 24, 2014. The government replied on December 12, 2014. *See* ECF No. 16.

## II. LEGAL STANDARD

The GCA states that an individual whose application for renewal of a federal firearms license has been denied "may at any time within sixty days after the date notice was given . . . file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation." 18 U.S.C. § 923(f)(3); *accord Weaver v. Harris*, 486 F. App'x 503, 505 (5th Cir. 2012) (*per curiam*), *cert. denied*, 133 S. Ct. 1606 (2013). It further states that

> [i]n a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing . . . . If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3). The Court's *de novo* review is limited to the specific question of whether the government's decision was authorized by law. *See Weaver*, 486 F. App'x at 505 (citing *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 464 n.2 (7th Cir. 1980)).

In the course of the *de novo* review, the government's decision is entitled to no presumption of correctness but "a court may give the [the government's] determination as much weight as the court deems appropriate." *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007) (citing *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004); *accord Strong v. United States*, 422 F. Supp. 2d 712, 719 (N.D. Tex. 2006) (citations omitted). In addition, courts are not required to hold an evidentiary hearing and may enter judgment solely based upon the administrative record. *See Strong*, 422 F. Supp. 2d at 720; *Stein's, Inc.*, 649 F.2d at 466–67 (holding that a court's *de novo* review of a denial of a firearms license "may be confined to the administrative record or may be supplemented by the admission of additional evidence" and that "trial anew of factual matters already litigated should be avoided unless substantial doubt infects the [government's] findings of fact"); *Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1077 (7th Cir. 2011) (no abuse of discretion in not conducting evidentiary hearing).

Instead, a court may grant summary judgment in an appeal from an ATF administrative decision when there are no issues of material fact in dispute. *See Weaver*, 486 F. App'x at 505; *Arwady*, 507 F. Supp. 2d at 758 (citing *Willingham Sports, Inc.*, 348 F. Supp. 2d at 1307); *Strong*, 422 F. Supp. 2d at 720 (citations omitted). *See also* Fed. R. Civ. P. 56(c)(1)(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that support an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non–moving party, and a fact is material if it might affect the outcome of the suit." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citation and quotation marks omitted). A "party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). If the moving party meets this initial burden, "the onus shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

### III. ANALYSIS

Petitioner argues that summary judgment is inappropriate in this case because there are factual issues in dispute. *See* Resp. 3–4. Petitioner requests time to conduct the deposition of witnesses. *Id.* at 4. The Court believes the administrative record is sufficient to render judgment. Summary judgment is appropriate in this case because Petitioner does not allege with any particularity additional facts or evidence which she claims cast "substantial doubt" on the government's decision. Moreover, Petitioner's proposed discovery is unrelated to the issue of whether her violations were willful and therefore is not reasonably calculated to lead to the discovery of admissible evidence. *See Weaver*, 486 F. App'x at 505–06. The Court therefore turns to whether the government properly denied Petitioner's application for renewal of her federal firearms license under section 923 of the GCA.

Pursuant to the GCA, the government may, "after notice and opportunity for hearing, revoke a firearms dealer's license if the licensee willfully violates a rule or regulation applicable to firearms dealers." *Id.* at 504 (citing 18 U.S.C. § 923(e)). Similarly, the government may deny

an application for a federal firearms license if the applicant has willfully violated any provision of the GCA or the regulations issued thereunder. *See* 18 U.S.C. § 923(d)(1)(C).

To prove that a firearms dealer willfully violated the law, the government must show that the licensee either intentionally and knowingly violated its obligations or was recklessly or plainly indifferent despite the licensee's awareness of the law's requirements. *See Weaver*, 486 F. App'x at 505; *Athens Pawn Shop v. Bennett*, 364 F. App'x 58, 59 (5th Cir. 2010) (*per curiam*) (citations omitted); *Arwady*, 507 F. Supp. 2d at 761 (citations omitted). Violations are considered willful if the licensee "has been informed of the regulations, warned of violations, and continually violates those requirements." *Arwady*, 507 F. Supp. 2d at 761 (citations omitted); *see also Athens Pawn Shop*, 364 F. App'x at 59-60 ("Repeated violation of known legal requirements is sufficient to establish willfulness."); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004) ("[A] single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license."). Evidence of a "bad purpose" or "evil motive" is not required. *Id.* (citations omitted).

The *Arwady* court identified a number of factors "tending to establish 'willfulness' as a matter of law[:] (1) a licensee's proven knowledge of its record keeping obligations, (2) persistent failure to comply with the same or similar provisions, and (3) receipt of a warning letter advising the licensee that repeated violations of the regulations could result in the revocation of its license." *Arwady*, 507 F. Supp. 2d at 762 (internal quotation marks omitted) (quoting *Nationwide Jewelry & Pawn, Inc. v. United States*, 455 F. Supp. 2d 1379, 1385 (M.D. Ga. 2006). All of these factors are present in this case.

Here, the record demonstrates that Petitioner had knowledge of her record keeping obligations under the GCA and failed to comply with the same or similar provisions after

receiving a warning letter. Prior to being granted her federal firearms license, Petitioner worked for another licensee. During the course of the initial qualification inspection in March 2010, Petitioner assured the ATF inspectors that based on this experience she had extensive knowledge of the firearms business. As part of that inspection, Petitioner signed an acknowledgement, accepting that she was responsible for familiarizing herself with all the laws and regulations governing the licensed firearms business.

As a result of the violations that were recorded following the July 27, 2010, compliance inspection, Petitioner attended a warning conference with ATF inspectors where she reviewed both the violations and the regulations that specifically addressed the ATF's "Right of Entry and Examination" and "Covered Premises" provisions. She was issued a letter based on these violations that cautioned her about possible future sanctions. It was these same or similar provisions that the government cited Petitioner for violating on July 31, 2012, and November 28, 2012.

Petitioner argues that any violation that may have occurred on July 31, 2012, was not willful because the store was not open to the public at the time of the inspection. *See* Resp. 5–7. The Court need not reach the issue. Regardless of whether the violations of July 31, 2012, occurred or not, Petitioner does not dispute that the November 28, 2012, sale of a firearm outside of the business premises occurred. Petitioner simply argues that it occurred without her knowledge and that she took remedial actions upon learning of it. *See* Resp. 7–8.

Whether Petitioner was aware of the transaction is irrelevant because a willful violation does not require a "bad purpose" or "evil motive." Furthermore, a business entity's federal firearms license may be revoked—or an application for renewal of its federal firearms license denied—because of willful violations by the company's employees. *See Stein's Inc.*, 649 F.2d at

468 (stating that where "the licensee is a corporation, it is chargeable with the conduct and knowledge of its employees"). Petitioner does not dispute that the sale occurred, or that it was transacted by an employee in the course and scope of his employment with her. The employee's actions are therefore imputed to Petitioner. This violation alone is sufficient to support the denial of Petitioner's application renewal on the basis that she willfully violated the GCA. However, Petitioner had also been previously warned about conducting business outside of the store premises; she signed an acknowledgement indicating such understanding. Considered together, these instances also exhibit a repeated pattern sufficient to establish willfulness. *See Athens Pawn Shop*, 346 F. App'x at 60.

Having conducted a *de novo* judicial review pursuant to section 923(f)(3) of the Gun Control Act, the Court concludes that Petitioner has not raised genuine issues of material fact in regards to whether her repeated compliance failures were willful violations of the Gun Control Act and its regulations. Accordingly, the government is entitled to judgment as a matter of law. The Court affirms the government's Final Notice of Denial of Application or Revocation of Firearms License, issued January 8, 2014.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Respondent Bureau of Alcohol, Tobacco, Firearms and Explosives' "Motion for Summary Judgment" (ECF No. 9) is **GRANTED**.

**IT IS ORDERED THAT** the Clerk of the Court **SHALL CLOSE** this case.

So ORDERED and SIGNED this 13th day of April, 2015.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE